No. 22-56016 & 22-56018
_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

ALON USA ENERGY, INC.,
*Defendant-Appellant*

v.

PERSIAN GULF INC. and JOSHUA EBRIGHT et al.,
on behalf of themselves and others similarly situated,
*Plaintiffs-Appellees*
_____

On Appeal from the United States District Court
for the Southern District of California
Case Nos.: 3:15-CV-1749, 3:18-CV-1374, & 3:18-CV-1377
The Honorable Jinsook Ohta
_____

Defendant-Appellant's Opening Brief
_____

Carl W. Hittinger, Esq.
Tyson Y. Herrold, Esq.
Baker & Hostetler LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103

*Attorneys for Defendant-Appellant*
*Alon USA Energy, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant

Alon USA Energy, Inc. was wholly acquired in 2017 by Delek US Holdings Inc., a

publicly held corporation.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED..........................................................................2

STATEMENT OF THE CASE...............................................................3

I.      Persian Gulf's original 2015 complaint did not contain a single specific allegation about Alon.............................................................3

II.     The Court denied Persian Gulf's request for pre-answer "plausibility discovery."...........................................................................4

III.    Persian Gulf filed an Amended Complaint with false allegations about Alon. ..........................................................................5

IV.    The District Court relied on Persian Gulf's false allegations, as it was required to under Rule 12, in denying the Defendants' motion to dismiss, including as to Alon.......................................................6

V.     The Consumer Plaintiffs filed a Consolidated Complaint largely identical to Persian Gulf's Amended Complaint that parrots the same false allegations about Alon. .........................................8

VI.    The District Court also relied on the Consumer Plaintiffs' false allegations, as it was required to under Rule 12, in denying Alon's motion to dismiss.............................................................9

VII.   Alon then produced publicly available documents to the Plaintiffs that contradicted their allegations about Alon....................................10

VIII.  In making their false allegations against Alon, Plaintiffs relied solely on their litigation consultant's single unsupported reference to Alon in a 2012 memorandum. .......................................................12

IX.    Plaintiffs refused to dismiss their claims against Alon despite the mass of evidence contradicting their allegations. ....................................16

X.     Alon then filed a motion to compel Plaintiffs to disclose the evidentiary basis, or lack thereof, for the false allegations in their Complaints. ............17

XI.    Plaintiffs' supplemental interrogatory answers confirmed they never had evidentiary support for their allegations against Alon and failed to perform a reasonable investigation prior to filing their Complaints. ............19

XII.   Plaintiffs engaged in expensive and burdensome discovery and refused to withdraw their claims despite their lacking a factual basis.......................22

XIII.   Plaintiffs failed to withdraw their Complaints against Alon within Rule 11's 21-day Rule 11 safe-harbor, forcing Alon to file its Motion for Sanctions. ................................................................................... 24

XIV.   Plaintiffs failed to take any discovery about Alon's refinery emissions but nonetheless continued to rely on the Selas Heater Emissions Chart at summary judgment despite uncontroverted deposition testimony that refinery emissions are not a reliable indicator of CARBOB production. ..... 27

SUMMARY OF THE ARGUMENT ....................................................... 32

STANDARD OF REVIEW ..................................................................... 33

ARGUMENT ........................................................................................... 33

I.   The District Court's ruling on Alon's request for Rule 11 sanctions should be reversed, or alternatively vacated and remanded. ......................... 33

   A.   The District Court erred as a matter of law by concluding Rule 11 sanctions are only warranted where a pleading is "factually baseless" as a whole—a standard that was overruled by the Ninth Circuit en banc in *Townsend v. Holman Consulting Corporation* ...... 34

   B.   The District Court committed clear error by concluding that Plaintiffs' counsel were justified in relying on the unsupported McCullough Memo in discharging their Rule 11 duty to investigate their factual allegations. ................................................... 37

   C.   The District Court committed clear error by holding that Alon did not show (i) the Market Participant Allegation was false and (ii) Plaintiffs' Counsel failed to conduct a reasonably inquiry into that allegation. .......................................................................... 41

   D.   But for Plaintiffs' false allegations, Alon would not have been a Defendant in this case. ....................................................... 44

II.   The District Court's ruling on Alon's request for 28 U.S.C. § 1927 sanctions should be reversed, or alternatively vacated and remanded. ......... 48

   A.   The District Court abused its discretion by failing to articulate any reasoning for denying Alon's request for 28 U.S.C. § 1927 sanctions. .......................................................................... 49

   B.   The evidentiary record is replete with evidence that Plaintiffs' Counsel continued to litigate their claims against Alon through costly discovery and summary judgment after it became clear they lacked evidentiary support. ................................................ 52

CONCLUSION ................................................................................................57

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Attia v. Google LLC*,
   No. 17-CV-6037, 2018 WL 2971049 (N.D. Cal. June 13, 2018)
   (Freeman, J.) ................................................................................39

*Baiul v. NBC Sports*,
   708 F. App'x 710 (2d Cir. 2017) ...................................................52

*In re California Bail Bond Antitrust Litig.*,
   511 F. Supp. 3d 1031 (N.D. Cal. 2021) (Tigar, J.)...........................46

*In re Capacitors Antitrust Litig.*,
   106 F. Supp. 3d 1051 (N.D. Cal. 2015) (Donato, J.)........................46

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002) .......................................................33

*City of Livonia Employees' Retirement System v. Boeing Company*,
   711 F.3d 754 (7th Cir. 2013) ....................................................47, 48

*Community Elec. Serv. v. National Elec. Contractors Ass'n, Inc.*,
   869 F.2d 1235 (9th Cir.1989) ........................................................36

*Cook-Benjamin v. MHM Corr. Servs., Inc.*,
   571 F. App'x 944 (11th Cir. 2014) .................................................52

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)........................................................................33

*Frey v. Town of Jackson*,
   41 F.4th 1223 (10th Cir. 2022) ......................................................52

*Garr v. U.S. Healthcare, Inc.*,
   22 F.3d 1274 (3d Cir. 1994) ..........................................................37

*In re Girardi*,
   611 F.3d 1027 (9th Cir. 2010) .......................................................52

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ........................................................... 33, 34

*Hunt v. Cnty. of El Dorado*,
No. 10-CV-1367, 2012 WL 4862362 (E.D. Cal. Oct. 11, 2012)
(Mendez, J.) .................................................................................... 48

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
991 F.3d 361 (2d Cir. 2021) ............................................................ 49

*In re Itel Sec. Litig.*,
791 F.2d 672 (9th Cir. 1986) ....................................................... 48, 56

*In re Keegan Mgmt. Co. Sec. Litig.*,
78 F.3d 431 (9th Cir. 1996) ............................................................. 48

*Kimble v. ADT Sec. Servs.*,
No. 16-CV-2519, 2018 WL 1898556 (S.D. Cal. Apr. 20, 2018)
(Curiel, J.) ...................................................................................... 48

*Lake v. Hobbs*,
No. 22-CV-677, 2022 WL 17351715 (D. Ariz. Dec. 1, 2022) ........................ 43

*LaSalle Nat. Bank of Chicago v. Cnty. of DuPage*,
10 F.3d 1333 (7th Cir. 1993) ........................................................... 50

*Les Shockley Racing, Inc. v. National Hot Rod Association*,
884 F.2d 504 (9th Cir. 1989) ........................................................... 36

*Malec Holdings II Ltd. v. Eng.*,
217 F. App'x 527 (7th Cir. 2007) ..................................................... 50

*United States ex rel. Morgan v. Champion Fitness, Inc.*,
No. 13-CV-1593, 2019 WL 693254 (C.D. Ill. Feb. 19, 2019) .................... 16, 44

*Murphy v. Business Cards Tomorrow, Inc.*,
854 F.2d 1202 (9th Cir. 1988) ................................................. 34, 35, 36

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ......................................................... 45

*Persian Gulf Inc. v. BP W. Coast Prod. LLC*,
No. 15-CV-1749, 2020 WL 12048991 (S.D. Cal. Apr. 6, 2020) ................ 10, 36

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
  115 F.3d 644 (9th Cir. 1997) ...................................................................49

*S. Bravo Sys., Inc. v. Containment Techs. Corp.*,
  96 F.3d 1372 (Fed. Cir. 1996) .................................................................50

*Smith v. Ricks*,
  31 F.3d 1478 (9th Cir. 1994) ...................................................................40

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) (Illston, J.) ...........................46

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) ...........................................................*passim*

*Trulis v. Barton*,
  107 F.3d 685 (9th Cir. 1995) .............................................................50, 51, 52

*W. Coast Theater Corp. v. City of Portland*,
  897 F.2d 1519 (9th Cir. 1990) ...............................................................34

## Rules

Fed. R. App. P. 4 ........................................................................................1, 2

Fed. R. Civ. P. 11 ................................................................................*passim*

Fed. R. Civ. P. 12 ................................................................................*passim*

Ninth Circuit Rule 30-1.1 .........................................................................3

Fed. R. Civ. P. 33 .....................................................................................19

## Statutes

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1332 .......................................................................................1

28 U.S.C. § 1337 .......................................................................................1

28 U.S.C. § 1367 .......................................................................................1

28 U.S.C. § 1711 .......................................................................................1

28 U.S.C. § 1927 .............................................................................*passim*

15 U.S.C. § 1 ................................................................................... 1

# JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction in *Persian Gulf Inc. v. Alon USA Energy, Inc.* (appeal number 22-56016) under 28 U.S.C. §§ 1331, 1332 and 1337 because Persian Gulf's Amended Complaint asserted claims under the Sherman Act (15 U.S.C. § 1) and because at least one member of the proposed class of plaintiffs was a citizen of a state that none of the Defendants were citizens of. The District Court had supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367 because they were so related to the federal claims establishing original jurisdiction, they formed part of the same case or controversy. The District Court had subject matter jurisdiction in *Ebright v. Alon USA Energy, Inc.* (appeal number 22-56018) under 28 U.S.C. §§ 1332 and 1711 et seq. because at least one member of the proposed class of plaintiffs was a citizen of a state that none of the Defendants were citizens of.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court granted summary judgment in favor of the Defendants on all claims, including those against Alon, and entered final judgment on September 30, 2022. No. 15-CV-1749, Dkt. 847 (summary judgment) & 848 (final judgment); No. 18-CV-1374, Dkt. 676 (summary judgment) & 677 (final judgment). This appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A) because a notice of

1

cross-appeal[1] was filed on October 31, 2021 (Dkt. 855), which was (i) within 30 days of final judgment, adjusted by one day because the 30th day fell on a Sunday (Fed. R. App. P. 4(a)(1)(A)) and (ii) within 14 days of the filing of the first notice of appeal in these cases (Fed. R. App. P. 4(a)(3)).

### ISSUES PRESENTED

1. Whether the District Court applied the wrong legal standard in denying Alon's request for Rule 11 sanctions by holding that sanctions are only authorized where a pleading is factually baseless as a whole.

2. Whether the District Court committed clear error by concluding that Plaintiffs and their Counsel were permitted to delegate to a third party their Rule 11 duty to conduct a reasonable prefiling investigation into their factual allegations against Alon.

3. Whether the District Court committed clear error by concluding that Alon failed to show (i) Plaintiffs' allegations were false and (ii) Plaintiffs and their Counsel failed to conduct a reasonable prefiling investigation into their factual allegations.

4. Whether Alon is entitled to sanctions under Federal Rule of Civil Procedure 11(c) where (i) Plaintiffs' factual allegations against Alon were false, (ii)

---

[1] These appeals were initially cross-appeals to appeals challenging the District Court's summary judgment decisions in favor of Alon and the other Defendants. Those original appeals have since been voluntarily dismissed with prejudice by Plaintiffs. Appeal No. 22-56010, Dkt. 12 & 22-56017, Dkt. 10.

Plaintiffs and their Counsel lacked an evidentiary basis under Rule 11(b)(3) for bringing them in the first place, and (iii) but for those false allegations, Alon would not have been a Defendant.

5. Whether the District Court abused its discretion in denying Alon's request for 28 U.S.C. § 1927 sanctions by failing to articulate its reasoning.

6. Whether Alon is entitled to sanctions under 28 U.S.C. § 1927 where Plaintiffs and their Counsel continued to litigate their claims against Alon after it became clear they lacked an evidentiary basis.

## STATEMENT OF THE CASE[2]

### I.    Persian Gulf's original 2015 complaint did not contain a single specific allegation about Alon.

Persian Gulf, Inc. sued the Defendants, including Alon, in California Superior Court on July 7, 2015. Case No. 15-CV-1749, Dkt. 1 (S.D. Cal.) ("PG Dkt.").[3] On August 6, 2015, the Defendants removed the case to this Court. *Id.* Persian Gulf later filed a "revised" Complaint that did not allege any specific anticompetitive conduct as to Alon but included a general allegation that all named

---

[2] While these two appeals have not been consolidated, the District Court cases were "coordinated" for pretrial purposes, these appeals concern identical orders by the District Court, the issues overlap substantially, and the Motion for Sanctions that form the basis for these appeals were briefed in a single round of briefing in the District Court. Thus, Alon is filing identical briefs in both appeals.

[3] Per advisory committee note to Circuit Rule 30-1.1, Alon cites the record, as opposed to the Excerpts of Record, only for background information that is undisputed.

3

Defendants were participants in the "California gasoline refinery market." PG Dkt. 56 at ¶ 87. On July 14, 2016, the Court granted a joint motion to dismiss filed by all Defendants and dismissed Persian Gulf's claims without prejudice, granting leave to file an amended complaint. 5-ER-892-903. In doing so, the Court held that Persian Gulf had not pled facts sufficient to support a plausible inference of conspiracy and had instead merely alleged parallel conduct that was equally consistent with independent, competitive decision-making. 5-ER-896-902.

## II. The Court denied Persian Gulf's request for pre-answer "plausibility discovery."

In opposing the Defendants' motion to dismiss its original Complaint, Persian Gulf on April 6, 2016 sought leave of Court to take discovery for the purpose of filing an amended pleading. 5-ER-932-33. Recognizing the heavy burden that discovery imposes on defendants in antitrust cases, the Court denied that request. 5-ER-903. Persian Gulf then filed a motion for leave to take limited discovery before amending. 5-ER-889-90. Magistrate Judge Skomal denied that request too, noting that under Ninth Circuit law an antitrust plaintiff is not entitled to conduct "plausibility discovery" to enable it to file an amended pleading that passes muster under Rule 12. 5-ER-885-87.

**III.    Persian Gulf filed an Amended Complaint with false allegations about Alon.**

On September 22, 2016, Persian Gulf filed its First Amended Complaint ("Amended Complaint"). 5-ER-809-82. In that pleading, filed over a year after it commenced litigation, Persian Gulf for the first time made two key factual allegations specifically directed to Alon that the Court later relied on—both of which were false. *First* and most significantly, Persian Gulf included the following allegation about Alon's Bakersfield hydrocracker ("Hydrocracker Allegation") on a chart that allegedly "details the suspicious plant closings in 2012, while the price of gasoline spiked and maintained high levels compared to the rest of the country":

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|------|---------|----------|------------------------------|----------------|----------------|------------------|
| 4/20/12 | Alon | Bakersfield | 3.2% | Planned | Hydrocracker restarted | No information |

5-ER-827. The Hydrocracker Allegation thus alleged that Alon deliberately shut down its Bakersfield refinery on April 20, 2012 as part of a conspiracy with other refiners to drive up the price of gasoline in California, even though Alon allegedly "restarted" its hydrocracker on that date, the opposite of a shutdown. Moreover, Persian Gulf admitted in the Hydrocracker Allegation itself to having "no information" from "industry sources" about that Allegation. *Second*, Persian Gulf alleged again, in the present tense, "[e]ach of the defendants is a participant in the California gasoline refinery market" ("Market Participant Allegation"). 5-ER-873.

5

**IV.    The District Court relied on Persian Gulf's false allegations, as it was required to under Rule 12, in denying the Defendants' motion to dismiss, including as to Alon.**

When the Defendants later moved jointly to dismiss the Amended Complaint, Persian Gulf filed an opposing brief emphasizing its allegation that "refiners embraced a parallel strategy of coordinated restraints of refinery capacity designed to and having the effect of increasing margins . . . ." 4-ER-785. In so alleging as to Alon, Persian Gulf wanted the Court (a) to believe that Alon shut down its Bakersfield refinery in late April 2012, close in time to other Defendants' alleged refinery outages, and (b) to conclude that the alleged timing of those shutdowns plausibly supported an inference of collusion. Constrained under Rule 12 to accept these factual allegations as true, the Court denied the Defendants' motion to dismiss the Amended Complaint, including as to Alon. 4-ER-753-72.

As the Court's opinion stated: "With respect to the maintenance shutdowns, during the short window of less than four weeks between April 20 and May 15, Alon, Shell, Tesoro, Chevron and BP each scheduled to shut down their refineries for maintenance." 4-ER-759. As Rule 12 required, the Court accepted Persian Gulf's pleading of "tightly synchronized multiple refinery shutdowns," including the Hydrocracker Allegation about Alon. 4-ER-767. The Court also attributed crucial anticompetitive significance to the allegedly coordinated shutdowns, finding that they supported a reasonable inference of market manipulation. 4-ER-

770. Ironically, the Court highlighted the relevance of Rule 11 to Persian Gulf's conspiracy allegations and acknowledged the relationship between Rules 11 and 12, stating, "a plaintiff must cross a high threshold to allege conspiracy and must at the same time comply with Rule 11 of the Federal Rules of Civil Procedure. It is therefore reasonable, and expected, of Plaintiff to allege conspiracy only for the time period for which it has factual and legal support." 4-ER-765. Had Plaintiffs heeded the Court's admonition in framing their allegations, Alon's Motion for Sanctions and this appeal would have been unnecessary.

Since the Hydrocracker Allegation was the *only* specific allegation of wrongful conduct made by Persian Gulf as to Alon, it followed—and the above-cited portions of the Court's opinion confirmed—that the Court materially relied upon it in denying the motion to dismiss as to Alon. Magistrate Judge Schopler reached the same conclusion in later ruling on a related discovery dispute, discussed below, in which Alon sought the factual basis for the Hydrocracker Allegation. 3-ER-482 (transcript of July 30, 2019 oral argument). Indeed, but for that Allegation, Persian Gulf's allegations against Alon in the Amended Complaint would have been limited to merely saying Alon was a member of several trade associations, as Persian Gulf otherwise *excluded* Alon from other key allegations. For example, Persian Gulf admitted that California's Attorney General did *not* issue a subpoena to Alon in her investigation of refinery shutdowns and gasoline

prices. 5-ER-824 (Alon excluded from allegation); 4-ER-787 (conceding Alon not subpoenaed). And Persian Gulf admitted that Alon is *not* a member of the WSPA, one of the trade associations that Persian Gulf portrayed as an alleged conduit for anticompetitive communications among the Defendants. 5-ER-863-64 (Alon excluded from allegation); 4-ER-787 (conceding Alon not a member).

**V.     The Consumer Plaintiffs filed a Consolidated Complaint largely identical to Persian Gulf's Amended Complaint that parrots the same false allegations about Alon.**

Just two days after the Court denied the motion to dismiss Persian Gulf's Amended Complaint, on August 8, 2018, Richard Bartlett and four other individuals (the "Consumer Plaintiffs") filed two copycat lawsuits that the Court later consolidated. Case No. 18-CV-1374, Dkt. 1 (S.D. Cal.) ("Ebright Dkt."). The Consumer Plaintiffs later filed a Consolidated Complaint ("Consolidated Complaint") in which they simply parroted Persian Gulf's allegations about "particularly suspicious" 2012 refinery shutdowns, alleging that "in a short window of less than four weeks between April 20 and May 15, 2012, defendants Alon, Shell, Tesoro, Chevron, and BP West each scheduled a shutdown of their refineries for maintenance." 4-ER-706. They also reproduced verbatim the table of alleged shutdowns that had appeared in paragraph 37 of Persian Gulf's Amended Complaint. 4-ER-708-09. And they likewise repeated Persian Gulf's present-tense allegation that "[e]ach of the Defendants is a participant in the California gasoline

refinery market." 4-ER-705. Other than these two allegations from Persian Gulf's Amended Complaint, there were no new or different allegations concerning Alon.

**VI.   The District Court also relied on the Consumer Plaintiffs' false allegations, as it was required to under Rule 12, in denying Alon's motion to dismiss.**

Alon thereafter joined in a motion by all Defendants to dismiss the Consumer Plaintiffs' claims on statute of limitations grounds to the extent those claims were based on pre-2014 conduct. Ebright Dkt. 60. Alon simultaneously filed its own motion, arguing that it should be dismissed from the Consumer Plaintiffs' case entirely because the Consolidated Complaint contained no specific allegations that Alon engaged in any relevant conduct within the statute of limitations period. 4-ER-570-81. In opposing Alon's motion, the Consumer Plaintiffs stressed their key allegation of "tightly synchronized multiple refinery shutdowns among Defendants," including Alon. 4-ER-560-61. As Persian Gulf did in opposing the motion to dismiss in that case, they likewise emphasized their false Hydrocracker Allegation that "Alon's Bakersfield refinery was shutdown [*sic*] in April 2012 in keeping with a series of other refinery shutdowns by other Defendants within a four-week period of price spikes." 4-ER-561-62.

The Court granted the Defendants' joint motion to dismiss the Consumer Plaintiffs claims for pre-2014 conduct based on the statute of limitations. 3-ER-526-33. But the Court denied Alon's separate motion to dismiss altogether, stating:

9

"To the extent BP's and Alon's motions are based on the insufficiency of factual allegations, they are denied for the reasons stated in the Order Denying Motion [sic] to Dismiss in *Persian Gulf*." 3-ER-533. Therefore, the Court again relied upon the false Hydrocracker Allegation, as it was required to under Rule 12. Although not expressly stated in the Court's opinion, the Court also relied upon the false Market Participant Allegation that Alon continued to participate in "California gasoline refinery market" after 2012. Otherwise, the Court would have dismissed Alon from the Consumer Plaintiffs' case entirely on statute-of-limitations grounds because, as discussed below, Alon did not, in fact, refine any CARBOB[4] in California after 2012. Therefore, it was not a participant in the "California gasoline refinery market" as of the 2018 Consolidated Complaint. In turn, Magistrate Judge Schopler later confirmed that the District Court did, in fact, rely upon these further allegations in denying Alon's motion to dismiss. 3-ER-482.

## VII. Alon then produced publicly available documents to the Plaintiffs that contradicted their allegations about Alon.

On April 25, 2019, while the motions to dismiss were pending in the Consumer Plaintiffs case, Alon produced documents to the Plaintiffs with a production letter highlighting significant points in the production that refuted the key Hydrocracker and Market Participant Allegations. 3-ER-535-42; 5-ER-981-82.

---

[4] The term "CARBOB" means California gasoline, and the terms are used interchangeably.

10

Alon produced a substantial quantity of internal documents detailing its California gasoline inventory, sales, production, and purchases, as well as financial information pertaining to its California operations and maintenance records for its California refineries. But much of its April 2019 production consisted of publicly available documents such as Alon's filings with the Securities and Exchange Commission, transcripts of Alon's investor conference calls, and press releases issued by Alon. 5-ER-981-87. In its production letter, Alon detailed at length, with corresponding citations, that the documents showed that Plaintiffs' Hydrocracker and Market Participant Allegations were factually inaccurate:

- Alon's California refineries primarily made asphalt, and only secondarily made lighter products such as gasoline, essentially as by-products.

- Alon had sought a way to obtain more value from its California operations by further refining vacuum gas oil, a relatively low-value by-product of asphalt refining at its Paramount facility near Los Angeles, into higher-value light petroleum products such as diesel, jet fuel, and gasoline.

- Alon acquired its Bakersfield refinery, then non-operational, out of the prior owner's bankruptcy estate in 2010, intending to use only one part of that refinery's infrastructure, the valuable hydrocracker, to further refine the vacuum gas oil produced by Alon's Paramount asphalt operations into lighter petroleum products.

- Alon reconfigured the Bakersfield hydrocracker accordingly and first brought it online in late June 2011.

- Due to a seasonal downturn in its primary asphalt market, Alon decided to take all of its California refineries (not just Bakersfield)

11

offline in December 2011—*not* in April 2012 as Plaintiffs have repeatedly alleged, and *not* in close temporal proximity to any other alleged refinery shutdown by any other Defendant.

- As the asphalt market recovered the following spring, Alon then brought its Paramount refinery back on line in April 2012 and, as Paramount again began to generate vacuum gas oil that could be further refined in the Bakersfield hydrocracker, brought its Bakersfield refinery back on line by June 2012—in other words, at the very time when Plaintiffs allege that Alon shut down its Bakersfield refinery, Alon was actually in the process of bringing all of its California refineries back into operation.

- By late 2012, again because of conditions in the asphalt market, Alon decided to suspend all of its refining operations again in California, and they were shut down once again by December 2012.

- Alon did not conduct any gasoline refining operations in California after December 2012—contrary to Plaintiffs' repeated allegation that Alon remained an active participant in the "California gasoline refinery market" as of when they filed their Complaints.

3-ER-536-41. Alon also pointed out that the documents it produced were publicly available and that Plaintiffs actually possessed at least some of them, including Alon's SEC filings and transcripts of Alon's earnings conference calls, which Plaintiffs had already produced in discovery. 3-ER-539.

## VIII. In making their false allegations against Alon, Plaintiffs relied solely on their litigation consultant's single unsupported reference to Alon in a 2012 memorandum.

Before sending its April 25, 2019 production letter, Alon reviewed Plaintiffs' document productions to determine whether they had produced any evidence that supported their Hydrocracker and Market Participant Allegations.

12

Alon was able to find only one document that was arguably relevant: a June 5, 2012 memorandum by Robert McCullough of McCullough Research entitled "Analysis of West Coast Gasoline Prices" (the "McCullough Memo"). 5-ER-958-62; 5-ER-987-88; 3-ER-541. The McCullough Memo contains a table of supposed 2012 refinery shutdowns much like the tables that appear in Plaintiffs' Complaints, including an entry for Alon showing a "Date Shutdown" of "4/20/2012" and "Hydrocracker Restar[t]ed" as the "Reason for Closure." 5-ER-959. But the McCullough Memo did not cite any source for that information and did not explain why a hydrocracker being *restarted* would be equivalent to a shutdown.

In January 2019, McCullough Research produced over 2,700 pages of documents to Defendants in response to a subpoena. 5-ER-988; 4-ER-545. Persian Gulf's Counsel handled the production for Mr. McCullough because he was Plaintiffs' retained expert. 4-ER-545. Plaintiffs' Counsel jointly represented that they retained Mr. McCullough as an expert in this litigation as long ago as June 2015. 4-ER-549. However, Mr. McCullough's document production contained no evidence to support the conclusory statement in the McCullough Memo that Alon shut down its Bakersfield refinery in April 2012. 5-ER-988-89. On the contrary, Mr. McCullough's production contained news articles that *corroborated* the publicly available information cited by Alon to Plaintiffs concerning its limited

13

California operations and that *contradicted* Plaintiffs' false Hydrocracker and

Market Participant Allegations:

- May 2, 2012 article: "Refining operations halted for at least one month for economic reasons, a local news report said on Jan. 15." In other words, it was publicly reported in January 2012 that Alon's Bakersfield refinery operations had already been suspended. 5-ER-967.

- August 20, 2012 article: "The [Bakersfield] plant has processed only vacuum gas oil left over from its L.A. County complex since reopening under Alon's ownership in June 2011. . . . The company's 100-employee Bakersfield plant reopened in June after being closed for about half a year because of poor operating margins." 5-ER-950.

- July 3, 2012 article: "A partial restart of Alon USA's 68,000 barrel-a-day refinery in Bakersfield, Calif., was made June 29, according to marketers and traders doing business with the refinery. The on again and off again refinery ran the hydrocracker for three days in May, before going down and restarting the unit earlier this week with diesel for sale." 5-ER-952.

- November 12, 2012 article: "Alon USA Energy on Nov. 6 said it is suspending operations at its California refineries because of low demand for the asphalt produced there and the high cost of West Coast crudes. The company awaits permits to bring in lighter crude varieties from the mid-continent region and to build infrastructure, which should be done by the fourth quarter of 2013." 5-ER-944.

- April 29, 2013 article: "Company purchasing asphalt to supply 2013 asphalt season. Refining complex operations suspended. Seeking permit to build rail line to supply midcontinent crude, the company said on March 8." 5-ER-941.

All of these sources were published long before Persian Gulf filed its Amended

Complaint and the Consumer Plaintiffs filed their Consolidated Complaint. They

14

had presumably been in Mr. McCullough's possession for years and were thus readily available to Plaintiffs and their Counsel.

In short, Plaintiffs: (i) regurgitated a single unsupported and unexplained reference to an Alon refinery shutdown (or restart) from the McCullough Memo as a means of holding Alon in these cases for years after the Court disallowed pre-answer discovery; (ii) performed no reasonable prefiling investigation of their allegations against Alon—because if they had done so, they would have realized that all of the publicly available evidence pointed uniformly to the conclusion that Alon shut down its California refineries at the end of 2011, not in April 2012, and that Alon ceased gasoline refining operations in California altogether by the end of 2012; and (iii) failed to consult their own expert, after retaining him in 2015, to determine the basis for the Alon shutdown allegation they were blindly lifting from the McCullough Memo—because if they had done so, they would have realized that there was no support for that allegation in Mr. McCullough's files. Worse, the Consumer Plaintiffs appear to have cut and pasted their allegations from Persian Gulf's Amended Complaint without any independent inquiry because they claim not to have had direct contact with Mr. McCullough. 4-ER-549 ("Consumer Plaintiffs confirmed that no one purporting to act on behalf of consumer plaintiffs for purposes of this litigation has had communications with . . . the entities enumerated in Interrogatory No. 6," which included Mr. McCullough).

15

**IX.  Plaintiffs refused to dismiss their claims against Alon despite the mass of evidence contradicting their allegations.**

In light of the foregoing facts, Alon's April 25, 2019 letter expressed doubt that Plaintiffs had satisfied their obligations under Rule 11 and demanded that Plaintiffs immediately dismiss Alon from their Complaints. 3-ER-542. Plaintiffs refused despite finally conceding that "the Alon Bakersfield refinery shuttered its doors for good at the end of 2012" and agreeing that "Alon is differently situated than other defendants." 3-ER-522-24. Persian Gulf's response pointed to the Court's denial of the motion to dismiss in the Persian Gulf case—as if a Rule 12 analysis where factual allegations must be assumed true as a matter of law somehow settled the question of whether Plaintiffs had factual support for those allegations under Rule 11.[5] 3-ER-522. The Consumer Plaintiffs did not respond separately to Alon's April 25th letter and document production—even though the motions to dismiss their Consolidated Complaint, including the false allegations Alon had identified, were still pending before the Court. 5-ER-989-90.

---

[5] As one Court summarized Rule 12's relationship to Rule 11: "Although a court must credit the well-pled allegations of the complaint when deciding a motion under Rule 12(b)(6), it is not so confined when considering a motion for sanctions. It should therefore come as no surprise that in reviewing this motion, the Court may doubt what it must take as true in reviewing other motions." *United States ex rel. Morgan v. Champion Fitness, Inc.*, No. 13-CV-1593, 2019 WL 693254, at *2 (C.D. Ill. Feb. 19, 2019) (internal quotations, citation, brackets omitted).

**X.  Alon then filed a motion to compel Plaintiffs to disclose the evidentiary basis, or lack thereof, for the false allegations in their Complaints.**

Meanwhile, to account for the possibility that Plaintiffs might have had some undisclosed evidence to support their Hydrocracker and Market Participant Allegations, Alon served interrogatories on the Plaintiffs in December 2018 seeking the basis for those and other allegations ("Basis Interrogatories"). Plaintiffs objected, and in briefing a subsequent motion to compel brought by Alon, Plaintiffs continued to repeat their false Hydrocracker Allegation to the Court despite the voluminous evidence to the contrary: "Alon's refinery shutdown in April 2012 was suspicious because of a combination of factors. . . . As detailed in the complaints, the shutdown was suspicious in terms of its timing, coinciding with four other refinery shutdowns or slowdowns by other Defendants within a short window of time in April and May 2012." 3-ER-511.

Plaintiffs did finally admit that their sole source for the false Hydrocracker Allegation was the unsupported McCullough Memo: "As Alon correctly guessed in writing Plaintiffs on April 25, 2019, the chart [containing the Hydrocracker Allegation] is based in large part on a chart found in a McCullough Research report from June 5, 2012 analyzing the price spikes in April and May 2012." 3-ER-512. With respect to the Market Participant Allegation, Plaintiffs tried to backtrack and argue that the Market Participant Allegation, which the Court had relied upon in denying Alon's motion to dismiss, did not say what it did: "This paragraph says

17

nothing about whether Alon participated in the California gasoline refinery market or conducted any gasoline refining operations to produce gasoline for sale in California since December 2012." 3-ER-508. That Allegation plainly does allege just that: "Each of the defendants is a participant in the California gasoline refinery market." 5-ER-873; 4-ER-705.

Magistrate Judge Schopler granted Alon's motion to compel and ordered Plaintiffs to supplement their answers to Alon's Basis Interrogatories. PG Dkt. 254 (text order); Ebright Dkt. 151 (same). During oral argument, the Court stated to Plaintiffs' counsel: "To the extent you're arguing that this is merely a frivolous or an abusive request, it does seem to me that they [*i.e.*, Alon] have a legitimate interest in pursuing Rule 11." 3-ER-473-74. Magistrate Judge Schopler also stated:

> [I]t appears that the basis for the interrogatories here are relevant. I confirmed, which I knew, that Judge Lorenz did rely on those two allegations in his orders [denying the motions to dismiss]. It appears that Alon has a good faith basis here or there's a plausible argument relating to their Rule 11 inquiry. So the requests here are relevant.
>
> . . .
>
> It does seem to me that plaintiffs should know what they base their allegations on in their complaint, so I would find that it's relevant, proportional, appears to not be privileged and, therefore, I would confirm my tentative and order that the motion to compel be granted but limited to the basis of each allegation.

3-ER-482-83.

**XI. Plaintiffs' supplemental interrogatory answers confirmed they never had evidentiary support for their allegations against Alon and failed to perform a reasonable investigation prior to filing their Complaints.**

Plaintiffs' Counsel served supplemental interrogatory answers on August 21, 2019—but in defiance of Magistrate Judge Schopler's Order and Rule 33(b)(5), the answers were not timely verified or otherwise signed by any of the named Plaintiffs. 5-ER-990; 4-ER-639; 4-ER-694. Persian Gulf provided a verification executed on August 23rd, and Plaintiff David Rinaldi likewise signed a verification on August 23rd, just before his deposition that day; Plaintiff Paul Lee executed one on August 28th. 5-ER-990. Mr. Rinaldi testified that he first received the supplemental interrogatory answers from his counsel shortly after 8:00 p.m. on August 21st—apparently after they had already been served on Alon—and did not review them until August 23rd, when he said he looked them over for a few minutes while meeting with his counsel for a total of thirty minutes to prepare for his deposition. 3-ER-448-58. The remaining three Consumer Plaintiffs did not verify their Court-ordered supplemental answers as of Alon's October 4, 2019 Motion for Sanctions—nearly a month and a half after Magistrate Judge Schopler's Order deadline. In light of Mr. Rinaldi's testimony, there is a serious question whether any of them even saw the supplemental answers prior to service. Plaintiffs' Counsels' failure to comply with a straightforward discovery order, after the Court gave them three weeks to do so, reflects their slipshod approach to suing

19

Alon. It also suggests Plaintiffs' Counsel were shamelessly treating their own

clients as puppets to do their bidding when called out on their deficiencies.

Substantively, the supplemental interrogatory answers confirmed once again

that Plaintiffs lacked evidentiary support for their allegations against Alon.

Foremost, Plaintiffs effectively admitted that the only source for their key

Hydrocracker Allegation was the unsupported McCullough Memo, there being no

other documents identified in those answers that corresponded to that Allegation.

4-ER-601 (citing McCullough Memo "in particular"); 4-ER-662 (same). While

Plaintiffs and their Counsel collectively cited a total of 52 other unique documents

that they purportedly relied on for this key Allegation, not a single one of those

documents supports it. Among the cited documents are (i) Alon's own SEC filings

and earnings conference call transcripts—which actually *contradict* the

Hydrocracker Allegation, (ii) various news articles, press releases, and

presentations that contain no mention of Alon or its Bakersfield refinery, (iii)

transcripts of Defendant Tesoro's earnings conference calls that do not mention

Alon or its Bakersfield refinery, and (iv) Federal Trade Commission and

Department of Justice documents from 2011 that likewise do not mention Alon or

its Bakersfield refinery and have no conceivable relevance to an alleged 2012

shutdown. 5-ER-991. In short, in response to interrogatories seeking the factual

basis for the Hydrocracker Allegation, Plaintiffs' Counsel ended up pointing to

nothing but documents that contradicted their allegations and documents that lacked any relevancy.

Plaintiffs and their Counsel also failed to identify any evidentiary support for their Market Participant Allegation. Instead, they tried to obfuscate this failure by citing evidence of a very different proposition that Alon has never denied— namely, that Alon continued to *own* refineries in California after its California refining operations were suspended at the end of 2012. 5-ER-991. But Plaintiffs' conspiracy theory is not consistent with Alon's mere ownership of idled refinery assets that would not have enabled Alon to make short-term decisions to contribute to or withhold from the supply of gasoline or otherwise affect the price of gasoline in California—or to benefit from higher gasoline prices. And Plaintiffs have never explained, let alone proven, how the owner of idled refining assets could have benefitted from a purported antitrust conspiracy. The only documents Plaintiffs even cited were Alon's own public documents—which contradict the Market Participant Allegation by confirming that Alon suspended all refining operations in California at the end of 2012 and never restarted them—and publicly available third-party documents (including OPIS Refinery Turnaround Reports and California Energy Commission website pages) that corroborate those Alon documents. 5-ER-990-92. Plaintiffs have never identified a single document supporting the contention that Alon carried out any gasoline refining operations in

21

California or otherwise participated in the "California gasoline refinery market" after 2012, as they had alleged and which the Court had relied upon. 5-ER-991.

In addition, Plaintiffs failed to provide evidentiary support for two other general allegations in their Amended Complaint: (i) that Alon, with the other Defendants, exported gasoline from California during the relevant time period, one means by which Defendants allegedly drove up prices, and (ii) that Alon, with the other Defendants, bought gasoline on the open market in October 2012, which allegedly shows Defendants had secret, advance knowledge of a problem with ExxonMobil's Torrance refinery and acted in concert to create an apparent shortage and drive up prices. 5-ER-991-92. The Court relied on both allegations in denying Defendants' motion to dismiss Persian Gulf's Amended Complaint. 4-ER-760, 767-69 (October 2012 "run on the market" allegation), 763, 767, 770 (export allegation). But in Plaintiffs' answers to Alon's Basis Interrogatories, they could not cite a single document to substantiate either of these key allegations as to Alon, confirming that they failed to conduct even the semblance of a reasonable pre-filing investigation before charging ahead and suing Alon. 5-ER-991.

## XII.  Plaintiffs engaged in expensive and burdensome discovery and refused to withdraw their claims despite their lacking a factual basis.

After the Court denied the motions to dismiss Persian Gulf's Amended Complaint and the Consumer Plaintiffs' Consolidated Complaints, Alon was subjected to exactly the kinds of burdensome expenditures the District Court

foresaw when it denied Persian Gulf's request to take pre-answer discovery to amend its original complaint. As described above, Alon incurred the expense of filing a separate motion to dismiss the Consumer Plaintiffs' Consolidated Complaint that may well have been unfairly doomed to failure by Plaintiffs' persistence in advocating false factual allegations, which the Court was required to accept as true under Rule 12 even though Plaintiffs were by then on notice that they were false.

As also described above, Alon was forced to file a motion to compel the Plaintiffs to supplement their interrogatory answers because Plaintiffs refused to back down from evasive objections designed to avoid revealing that they lacked evidentiary support for the key allegations they had induced the Court to rely on. Then, as described above, Plaintiffs disobeyed Magistrate Judge Schopler's discovery order by failing to serve timely verifications—and perhaps did not even read or understand their supplemental interrogatory answers before their counsel served them, as Plaintiff Rinaldi admitted he did not. *See supra*, Statement of Case § XI. Meanwhile, Plaintiffs and their Counsel recklessly pursued overbroad and costly document discovery, took lengthy depositions of 4 Alon employees, and opposed Alon's motions for summary judgment, which cost Alon millions of dollars in attorneys' fees and costs. 5-ER-992.

As another example of Plaintiffs' slapdash approach to these cases in a manner that unreasonably and vexatiously increased Alon's costs, on the evening of August 19, 2019—more than a year into the Consumer Plaintiffs' case and barely one business day before Plaintiffs Richard Bartlett and Kristine Snyder were to be deposed on August 21st and 22nd, respectively, Counsel for the Consumer Plaintiffs suddenly notified Defendants' counsel, "[w]e will be moving to voluntarily dismiss Plaintiffs Bartlett and Snyder from the Consumer Plaintiffs case in the next couple of days. Therefore, their depositions will not proceed." 5-ER-992-93. Consumer Plaintiffs' counsel offered no explanation for their sudden unwillingness to continue representing the putative consumer class on the eve of their depositions, stating only that "the best interests of the class are served by their withdrawal as class representatives." 5-ER-992-93.

## XIII. Plaintiffs failed to withdraw their Complaints against Alon within Rule 11's 21-day Rule 11 safe-harbor, forcing Alon to file its Motion for Sanctions.

On August 29, 2019, Alon served a copy of its Motion for Sanctions, along with a copy of undersigned counsel's supporting declaration, supporting brief, and Alon's proposed order, on Plaintiffs in accordance with Rule 11(c)(2). 5-ER-993. Alon also sent a cover letter advising Plaintiffs that unless they withdrew their claims against Alon, the Motion for Sanctions would be filed. 5-ER-993. Plaintiffs (except for Richard Bartlett and Kristine Snyder, who voluntarily withdrew from

24

the case entirely) did not withdraw their claims. Thus, after the safe-harbor period expired, Alon filed its Motion for Sanctions under Rule 11 and 28 U.S.C. § 1927, which is the subject of this appeal.[6] 3-ER-402-34.

In their response to the Motion for Sanctions, and after more than three years of costly litigation, Plaintiffs admitted that their Hydrocracker Allegation was wrong—flippantly calling it a "scrivener's error"—but otherwise failing to elaborate how it had become part of the Complaints or whether Plaintiffs' Counsel had ever investigated whether there was factual support for it. 3-ER-375. What's more, Plaintiffs cited for the first time a declaration by their litigation consultant Mr. McCullough, the source of the false Hydrocracker Allegation. 3-ER-378-79, 385. That declaration contained a chart, never before disclosed, purporting to show "$NO_X$ emissions" from a "Selas heater" at Alon's Bakersfield refinery ("Selas Heater Emissions Chart"). 3-ER-385. According to Plaintiffs, the $NO_X$ emissions showed that Alon's Bakersfield hydrocracker was refining CARBOB into the beginning of 2012, albeit only until February 15, 2012, not April 20, 2012 as Plaintiffs had falsely alleged in the Hydrocracker Allegation. 3-ER-248; 3-ER-375, 378. Notably, Plaintiffs did not cite Selas heater emissions in responding to Alon's Basis Interrogatories, as ordered by the Court, nor had Plaintiffs ever before raised the issue of Alon's Selas heater emissions in any context, suggesting the Emissions

---

[6] Alon's Motion for Sanctions was substantively identical in both cases.

Chart was nothing but an ad hoc attempt at the eleventh hour to justify claims that had no evidentiary basis from the outset.

Moreover, the Selas Heater Emissions Chart suffered from several fundamental defects. Neither Plaintiffs nor Mr. McCullough identified the author of the emissions chart or provided any insight into the data or methodology purportedly used to create it. They also failed to explain any connection between emissions data from a Selas heater and the Bakersfield hydrocracker's production of CARBOB, a connection they asked the Court to draw from the chart. The ostensible author of the Emissions Chart, Mr. McCullough, has disclaimed any expertise on refinery operations, so he was not qualified to expound on the connection between Selas heater emissions and CARBOB production. 2-ER-215-16 (CV showing no relevant education or experience); 2-ER-137 (retained to testify about the "structure of the California gasoline market" and "market manipulation"); 2-ER-194 ("not an expert on refinery logistics"); 2-ER-197 (never "worked at an oil refinery in any capacity"). Thus, the Selas Heater Emissions Chart failed to provide any support for their allegations against Alon.

On May 7, 2020, the District Court denied Alon's motion for sanctions. 1-ER-3-9.[7] On Alon's Rule 11 argument, the Court stated:

---

[7] Because the Orders denying Alon's Motion for Sanctions are identical in both cases, future citations will only reference the Persian Gulf Order.

Although the allegation in Paragraph 37 was inaccurate, Alon has not shown Plaintiffs' Complaints are factually baseless. Furthermore, given the repeated third-party reliance on the McCulloch Report, which was the asserted basis for the allegation in the chart, the Court cannot say Plaintiffs' Counsel failed to conduct a reasonable and competent inquiry into the allegation. As for the other allegation, Alon has not shown it was false, or that Plaintiffs' Counsel failed to conduct a reasonable and competent inquiry into the allegation. Accordingly, Alon's request for sanctions under Rule 11 is denied.

1-ER-5. Addressing Alon's separate request for § 1927 sanctions, the Court simply stated: "Alon bears the burden to show Plaintiffs' Counsel acted with subjective bad faith, and it has not met that burden here." 1-ER-5.

## XIV. Plaintiffs failed to take any discovery about Alon's refinery emissions but nonetheless continued to rely on the Selas Heater Emissions Chart at summary judgment despite uncontroverted deposition testimony that refinery emissions are not a reliable indicator of CARBOB production.

Despite Plaintiffs' singular reliance on the Selas Heater Emissions Chart in opposing Alon's Motion for Sanctions, Plaintiffs never pursued any discovery on the issue of Alon's refinery emissions. Nor did Plaintiffs ever produce the data purportedly used to create the Selas Heater Emissions Chart, or explain the methodology used to construct it. The proponent of the Chart, Mr. McCullough, was deposed for 4 days and produced 400 pages of expert reports, but there was not a single mention of Alon's refinery emissions in all that expert discovery. Mr. McCullough did not mention Alon at all in his reports and testimony, except to say Alon did not receive a subpoena from the California attorney general during its 2016 investigation into the California gasoline market. Plaintiffs' Counsel deposed

27

4 Alon witnesses at length but did not ask a single question about Selas heaters specifically or Bakersfield refinery emissions generally, much less whether NOX emissions from a Selas heater correlate to a refinery's production of CARBOB.

To the contrary, testimony provided by several Alon witnesses demonstrated the opposite proposition—that there is no reliable correlation between refinery emissions and CARBOB production. In short, a refinery's utility units, such as a Selas heater, were frequently operational, and thus could produce some emissions, even when the Bakersfield hydrocracker was not producing CARBOB. Testifying about the Bakersfield refinery shutdown at the end of 2012, Alon's former CEO Alan Moret stated:

> Whether it was 2012 or afterwards, you know, the refinery was shutdown. The facility, the processing units were shutdown. Okay? That doesn't mean that we shut down, for example, all the utility units. Like, we would be running still boilers. You know, we were running boilers both to provide, you know, some of the pipelines. And some of the lines in the plant would be steam traced, so we were producing steam in order to, you know, keep petroleum from setting up inside of the pipelines and other vessels. So we were running boilers.

2-ER-203. Tony Nader, an Alon employee who at that time was responsible for purchasing natural gas and transferring product at Alon's California refineries, corroborated Mr. Moret's testimony: "Even when [Alon's California refining] assets are at reduced rates or down, they still require a certain amount of natural gas, so we continued the purchase of natural gas for those assets." 2-ER-211.

Despite this unrebutted evidence discrediting any connection because Selas heater emissions and CARBOB production, Plaintiffs continued to rely heavily on the Selas Heater Emissions Chart in unsuccessfully opposing Alon's motion for summary judgment. That motion argued that there was no evidence that Alon participated in a conspiracy and no evidence that Alon even refined CARBOB at its Bakersfield refinery from December 2011 to June 2012 or after 2012. 2-ER-165. In response, Plaintiffs pointed again to the Emissions Chart, arguing: (i) the timing of the "December 2011 shutdown" at Alon's Bakersfield refinery, as shown in Alon's public disclosures, was "highly suspect" because of the "emissions data" (2-ER-148), (ii) "according to the emissions data, Alon's Bakersfield refinery was operational at least during the first half of the first quarter of 2012" (2-ER-150), and (iii) the Selas Heater Emissions Chart "directly refutes, and creates an issue of genuine material fact, with respect to Alon's arguments about its refining operations" (2-ER-150).

Plaintiffs and their Counsel either knew or should have known that these rehashed assertions were false because: (i) Plaintiffs had failed to seek any fact or expert discovery concerning Alon's refinery emissions or to establish a connection between Selas heater emissions and CARBOB production, which also rendered the Emissions Chart inadmissible, (ii) Alon's witnesses provided unrebutted testimony that refinery emissions were not a reliable indicator of CARBOB production, and

29

(iii) direct evidence in the public domain and long in Plaintiffs' Counsel's possession contradicted Plaintiffs' timeline of Bakersfield refinery operations. Plaintiffs' Counsel have never explained why, despite years of costly discovery, they were unable to adduce a shred of *direct* evidence that Alon was refining CARBOB at its Bakersfield refinery between December 2011 and June 2012 and after December 2012.

Even more significantly, Plaintiffs were unable at summary judgment to cite *any evidence* of a conspiracy involving Alon to fix prices or limit the supply of CARBOB in California. As the District Court found in granting summary judgment in Defendants' favor, Alon included, Plaintiffs merely argued that an inference of conspiracy could somehow be drawn from evidence of exchange agreements, imports and exports, wash trades, and selective price reporting to OPIS, among other transactions. 2-ER-37-38. (concluding no direct evidence of conspiracy), 41-92 (discussing "plus factors"). But the uncontroverted evidentiary record showed that, unlike some other Defendants, Alon did not have CARBOB exchange agreements, was not involved in any CARBOB imports or exports from California, did not engage in CARBOB wash trades, and *never* reported CARBOB prices to OPIS, and Plaintiffs failed cite any evidence to the contrary at summary judgment. Instead, Plaintiffs resorted to: (i) citing documents concerning diesel, AZRBOB (Arizona gasoline not suitable for California), and natural gas, none of

which was at issue in this case; (ii) citing documents allegedly demonstrating the sharing of confidential information, but where the purportedly confidential information had already been publicly disclosed months or even years prior; and (iii) misrepresenting evidence that did not show what Plaintiffs falsely claimed it showed, much less that Alon was part of a years-long conspiracy. 2-ER-116-134. (Alon's objections to Plaintiffs' summary judgment evidence).

As but one example of Plaintiffs' continued shameless misrepresentation of evidence, they cited a California Energy Commission website for the false proposition that "regulators at the California Energy Commission continued to reference the Alon refineries as operational until at least 2016." 2-ER-155-56. But the Commission website did not indicate that Alon's California refineries were operational, as claimed. It only showed maximum theoretical "crude oil capacity" and expressly disclaimed: "Data on this table represents total crude oil capacity, not gasoline, distillate production, diesel fuel production or production of other products. Production potential varies depending on time of year and status of the refinery." 5-ER-971, 974, 977.

In short, Plaintiffs continued to recklessly press forward with baseless claims that lacked any factual basis from the start. As a result, in September 2022, the District Court granted Alon's motion for summary judgment, as well as the

Defendants' joint motion for summary judgment, and entered judgment in favor of Alon and the other Defendants.

## SUMMARY OF THE ARGUMENT

In denying Alon's request for Rule 11 sanctions, the District Court erred as a matter of law in holding that sanctions are only permitted where a pleading is factually baseless as a whole. The Ninth Circuit overruled that standard in 1990 and concluded sanctions are appropriate even for partially frivolous pleadings. The District Court committed clear error by concluding Plaintiffs and their Counsel were justified in relying on their expert's unsupported memorandum in making their false factual allegations against Alon, in lieu of conducting their own prefiling investigation. Rule 11 does not permit counsel to delegate their duty to investigate factual allegations. The District Court also committed clear error by finding that Alon failed to prove Plaintiffs' allegations were factually frivolous. The uncontroverted record shows the allegations against Alon were false and that Plaintiffs and their Counsel never had support for them, meaning they also failed to conduct a reasonable prefiling investigation. Alon is entitled to Rule 11 sanctions.

In denying Alon's request for 28 U.S.C. § 1927 sanctions, the District Court abused its discretion by failing to articulate any reasoning for denying that request. The evidentiary record is replete with evidence that Plaintiffs and their Counsel continued to litigate their claims against Alon through costly discovery and

summary judgment even after it became clear that their claims lacked any evidentiary support. Thus, Alon is entitled to § 1927 sanctions.

## STANDARD OF REVIEW

A district court's decision not to award sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 is reviewed for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.*

## ARGUMENT

I. **The District Court's ruling on Alon's request for Rule 11 sanctions should be reversed, or alternatively vacated and remanded.**

"By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support . . ." Fed. R. Civ. P. 11(b)(3). Rule 11 requires courts to conduct a "two-prong inquiry" to determine (1) "whether the complaint is legally or factually baseless" and (2) whether counsel "conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). If the complaint fails both prongs of the test, it is "frivolous" under Rule 11 and subject to sanctions. *Holgate v. Baldwin*, 425 F.3d

33

671, 676 (9th Cir. 2005). The standard under both prongs is "objective," not subjective (*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)), and the standard is not applied in hindsight but as of the time the challenged paper was signed and filed. *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1526 (9th Cir. 1990).

A.   **The District Court erred as a matter of law by concluding Rule 11 sanctions are only warranted where a pleading is "factually baseless" as a whole—a standard that was overruled by the Ninth Circuit en banc in *Townsend v. Holman Consulting Corporation*.**

In denying Alon's request for Rule 11 sanctions, the District Court stated: "Although the [Hydrocracker] Allegation in Paragraph 37 was inaccurate, Alon has not shown Plaintiffs' Complaints are factually baseless." 1-ER-5. In so finding, the District Court appears to have been of the view that Rule 11 sanctions are only authorized where pleadings are factually baseless as a whole. But the Ninth Circuit has long held, "the mere existence of one non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (internal quotations omitted). The District Court's ruling thus applies an outdated interpretation of Rule 11 once articulated in *Murphy v. Business Cards Tomorrow, Inc.*, 854 F.2d 1202, 1205 (9th Cir. 1988), where a three-judge panel of the Ninth Circuit held: "We have held that Rule 11 permits sanctions only when the pleading as a whole is frivolous or of a harassing nature, not when one of the allegations or arguments in the pleading may be so

34

characterized." Two years later, *Murphy* was expressly overruled by the Ninth Circuit en banc in *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990), which held: "Under the logic of *Murphy* and *Community Electrical,* the panel majority's decision in this case was understandable. As an *en banc* court, we use this opportunity to overrule *Murphy*."[8] *Id*. at 1363. After *Townsend*, even a partially "frivolous" pleading may rightfully violate Rule 11 and warrant sanctions.

The *Townsend* Court's concern with *Murphy's* frivolous-as-a-whole rule was that it gave plaintiffs free license to add claims, allegations and parties to a case without regard to whether those additional claims or allegations were well-founded or whether those additional parties were involved in the allegedly illegal conduct, just as Plaintiffs added Alon as a defendant in these cases. The *Townsend* Court explained: "Under *Murphy,* a party that has one non-frivolous claim may pile on frivolous allegations without a significant fear of sanctions. Under the three-judge panel majority's extension of *Murphy* in this case, a party with one non-frivolous claim frivolously could add defendants without a significant fear of sanctions." 929 F.2d at 1363. *Murphy's* "artificial safe harbor for frivolous allegations or claims," the Court held, "would ill serve the purpose [of Rule 11]." *Id*. at 1363-64.

---

[8] *Community Electric's* holding was based on *Murphy's* holding, so it too was overruled by *Townsend*. 929 F.2d at 1363.

While the District Court here did not cite any cases in applying the frivolous-as-a-whole standard for Rule 11 sanctions, its nearly identical decision one month earlier on Defendant Tesoro's Rule 11 motion shows it was, in fact, applying the overruled *Murphy* rule. In denying Tesoro's motion, the District Court cited *Les Shockley Racing, Inc. v. National Hot Rod Association*, 884 F.2d 504, 509-10 (9th Cir. 1989) for the proposition that "Rule 11 sanctions are inappropriate unless the pleading, motion, or other paper is frivolous when considered as a whole." *See Persian Gulf Inc. v. BP W. Coast Prod. LLC*, No. 15-CV-1749, 2020 WL 12048991, at *2 (S.D. Cal. Apr. 6, 2020). However, *Les Shockley* predates *Townsend*, and it relied on the *Murphy* and *Community Electric* cases that the *Townsend* Court overruled one year later:

> Rule 11 sanctions are inappropriate unless the pleading, motion, or other paper is frivolous when considered as a whole. *Community Elec. Serv. v. National Elec. Contractors Ass'n, Inc.,* 869 F.2d 1235, 1242 (9th Cir.1989). The mere presence of a deficient or even frivolous allegation does not necessarily violate the rule. *Murphy v. Business Cards Tomorrow, Inc.,* 854 F.2d 1202, 1205 (9th Cir. 1988).

*Les Shockley*, 884 F.2d 509-10. Thus, the District Court applied the wrong standard and erred as a matter of law in denying Alon's request for Rule 11 sanctions.

36

**B.** **The District Court committed clear error by concluding that Plaintiffs' counsel were justified in relying on the unsupported McCullough Memo in discharging their Rule 11 duty to investigate their factual allegations.**

In denying Alon's request for Rule 11 sanctions, the District Court stated: "[G]iven the repeated third-party reliance on the McCulloch Report [sic],[9] which was the asserted basis for the allegation in the chart, the Court cannot say Plaintiffs' Counsel failed to conduct a reasonable and competent inquiry into the allegation." 1-ER-5. While the Court did not identify the "third parties" to which it was referring, it presumably meant McClatchy News Service and Senator Maria Cantwell, which Plaintiffs mentioned in their opposition to Alon's Motion for Sanctions. 3-ER-380. The Court's reasoning and finding presents several errors. First, "third-party reliance" on the McCullough Memo is completely irrelevant to the reasonable-inquiry requirement of Rule 11 because newspaper publications and politicians' statements are not subject to Rule 11. *Cf. Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3d Cir. 1994)[10] (holding that class counsel relying exclusively on (i) a *Wall Street Journal* article and (ii) a complaint filed by another law firm

---

[9] This is a reference to the McCullough Memo.

[10] The Third Circuit has adopted a different standard than the Ninth Circuit for Rule 11 liability in the context of a complaint, but *Garr*'s persuasive analysis of what constitutes a reasonable pre-filing investigation is fully congruent with precedent in this Circuit.

asserting the same claims on behalf of a different plaintiff did not discharge plaintiffs' counsel's Rule 11 duty).

Second, Plaintiffs' Counsels' blind reliance on the unsupported McCullough Memo itself did not discharge their Rule 11 duty to investigate their factual allegations against Alon before filing their Complaints. The McCullough Memo was not itself a primary evidentiary source for information about refinery operations; rather, it simply collected information purportedly gathered by Mr. McCullough from other unidentified sources.[11] The Court's sole reliance on the McCullough Memo in denying Alon's Motion for Sanctions thus implies that Rule 11 allows legal counsel to delegate their pre-filing investigation to third parties such as Mr. McCullough. But the advisory committee notes to the 1993 amendments to Rule 11 clarify that delegating investigatory duties is not allowed: "The person signing, filing, submitting, or advocating a document has a *nondelegable* responsibility to the court." The problem with the District Court's reasoning here is it would allow—and indeed encourage—counsel to delegate their Rule 11 duty to third parties who are beyond the sanctioning jurisdiction of the Court, rendering Rule 11 toothless.

---

[11] Plaintiffs' Counsel has notably never explained where the inaccurate information in the McCullough Memo, which they flippantly call a "scrivener's error," came from, but Mr. McCullough certainly did not have first-hand knowledge about Alon's operations, nor has he ever claimed to.

There is no question that Plaintiffs' Counsel relied exclusively on the

McCullough Memo in making the key Hydrocracker Allegation and thus

improperly delegated their Rule 11 investigatory responsibilities. They so admitted

in their response to Alon's Motion for Sanctions:

> Plaintiff Persian Gulf retained McCullough as an expert and, as part of his engagement, he reviewed drafts of Plaintiff's Complaint prior to its filing on September 22, 2016. At the time of McCullough's review, he had no reason to doubt the accuracy of his Report's table, which listed Alon's Bakersfield refinery as having been shut down on April 20, 2012 and still shut down as of June 5, 2012. If he had had any doubts as to the accuracy of this information, he would have shared them with counsel, but he had none, and therefore had nothing to share or correct regarding this information, which was alleged in the draft and filed Complaint.

3-ER-381. Further, in responding to Alon's Basis Interrogatories, as ordered by the

Court, Plaintiffs' Counsel cited the McCullough Memo "in particular" in

identifying the basis for their allegations against Alon. *See supra*, Statement of

Case § XI. And the McCullough Memo is the only document Plaintiffs produced in

discovery that contains the incorrect April 20, 2012 date that made its way into the

false Hydrocracker Allegation. *Id*. at § VIII. Similarly, the Consumer Plaintiffs

blindly relied exclusively on Persian Gulf's Hydrocracker Allegation in making

their own copycat Hydrocracker Allegation because they claim not to have had

direct contact with Mr. McCullough. *Id*. This is likewise an impermissible

delegation of their Rule 11 duty. *See also Attia v. Google LLC*, No. 17-CV-6037,

2018 WL 2971049, at *15 (N.D. Cal. June 13, 2018) (Freeman, J.) ("Given the

nondelegable duty imposed on attorneys under Rule 11, courts routinely strike allegations that rely exclusively on the analysis and investigation of different attorneys in different actions.").

Plaintiffs' Counsel have notably never claimed to have independently investigated the information in the McCullough Memo, despite Alon's argument in its Motion for Sanctions that Plaintiffs' Counsel relied solely on the McCullough Memo in making the Hydrocracker Allegation. In the District Court, they tried to dodge the prefiling-investigation issue entirely by arguing that the Hydrocracker Allegation was simply an excusable "scrivener's error." 3-ER-375. Suggesting that the Court simply disregard that key Allegation as an "error" cannot save Plaintiffs' Counsel from sanctions where they failed to undertake any independent investigation into its veracity, thereby misleading the District Court into denying Alon's motions to dismiss. *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) (affirming Rule 11 sanctions for baseless motion that filing party admitted was "stupid mistake," explaining: "[C]ounsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."). Their silence on this crucial prefiling-investigation point, along with their discovery responses, shows that there was no such independent investigation and that Plaintiffs' Counsel relied entirely on the unsubstantiated McCullough Memo in

making the key Hydrocracker Allegation. Accordingly, the District Court erred as a matter of law, warranting a reversal and remand.

**C.** **The District Court committed clear error by holding that Alon did not show (i) the Market Participant Allegation was false and (ii) Plaintiffs' Counsel failed to conduct a reasonably inquiry into that allegation.**

In denying Alon's request for Rule 11 sanctions, the District Court stated: "Alon has not shown [the Market Participant Allegation] was false, or that Plaintiffs' Counsel failed to conduct a reasonable and competent inquiry into the allegation." 1-ER-5. Those two conclusions are not supported by the evidence. First, Alon's Motion for Sanctions pointed to a mountain of publicly available documents, some of which were in Plaintiffs' Counsels' possession when they filed their Complaints, showing that Alon's Bakersfield refinery did not produce CARBOB after 2012, directly contradicting the Market Participant Allegation. 3-ER-416-18. During discovery, Alon reviewed Plaintiffs' document productions, as well as documents produced by Mr. McCullough, and confirmed there was nothing in those productions supporting the Market Participant Allegation. Plaintiffs never came forth and showed otherwise. Alon also served Basis Interrogatories seeking the basis for the Market Participant Allegation, but Plaintiffs were unable to cite any evidence in support of the Allegation. *See supra*, Statement of Case §§ X, XI. Plaintiffs have never cited a shred of evidence suggesting that Alon refined CARBOB in California after 2012, so the uncontroverted evidentiary record shows

41

the Market Participant Allegation to be false. The District Court nonetheless failed to address any of that overwhelming evidence or Plaintiffs' failure of proof.

In responding to Alon's Motion for Sanctions, Plaintiffs tried to obfuscate their failure to provide any support for the Market Participant Allegation by citing evidence for a very different proposition that Alon has never denied—namely, that Alon continued to *own* refineries in California after its California refining operations were suspended at the end of 2012. 3-ER-382-84. But Plaintiffs' conspiracy theory was not consistent with Alon's mere ownership of idled refinery assets that would not have enabled Alon to make short-term decisions to contribute to or withhold from the supply of gasoline in California, much less to benefit from higher gasoline prices. Plaintiffs have never offered a plausible explanation for why Alon would choose to be part of a purported conspiracy in which it did not produce the product that was allegedly the subject of the conspiracy at issue and therefore could not have profited from higher prices. Because Alon was not refining CARBOB after 2012, it would have had to first purchase any CARBOB it resold (or blendstock that it used for blending into CARBOB for resale) at prevailing market prices, meaning that, if there were a purported price fixing conspiracy, Alon would have been its victim, not its beneficiary.

Second, Plaintiffs' inability to cite any evidence supporting the Market Participant Allegation doubles as proof that Plaintiffs failed to conduct a

42

reasonable investigation. By definition, a prefiling investigation into an allegation cannot be reasonable if the evidence Plaintiffs' Counsel reviewed in making the allegation uniformly contradicts it. District Judge John J. Tuchi addressed this very issue several months ago in *Lake v. Hobbs*, No. 22-CV-677, 2022 WL 17351715 (D. Ariz. Dec. 1, 2022), in which he correctly reasoned:

> Plaintiffs evidently failed to conduct the factual and legal pre-filing inquiry that the circumstances of this case reasonably permitted and required. The Court need not conduct a further evidentiary inquiry to make this finding. As discussed herein, any objectively reasonable investigation of this case would have led to publicly available and widely circulated information contradicting Plaintiffs' allegations and undercutting their claims. Thus, Plaintiffs either failed to conduct the reasonable factual and legal inquiry required under Rule 11, or they conducted such an inquiry and filed this lawsuit anyway. Either way, no reasonable attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded.

*Id*. at \*14 (internal quotations omitted) (granting Rule 11 sanctions).

Plaintiffs' Counsel have notably never identified in any filing or at any hearing what they actually did to investigate the Market Participant Allegation, other than to say they (i) reviewed publicly available documents, all of which contradict the Market Participant Allegation and (ii) "consulted" with their expert, which is too general to be of any probative value, and in any event suggests again that they simply improperly delegated their Rule 11 responsibilities. 3-ER-389, 396. Once Alon identified publicly available evidence squarely contradicting the Market Participant Allegation, it was incumbent on Plaintiffs' Counsel to elaborate

on their purported investigation into that Allegation, which information is uniquely in the possession of Plaintiffs and their Counsel. *See United States ex rel. Morgan v. Champion Fitness, Inc.*, No. 13-CV-1593, 2019 WL 693254, at *2 (C.D. Cal. Feb. 19, 2019) (McDade, J.) ("The party seeking Rule 11 sanctions must establish a *prima facie* case that sanctionable conduct has occurred by filing a motion based upon non-frivolous allegations at which point the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim."). Plaintiffs' Counsels' failure to meet its burden on these issues warrants reversal and, if there is any doubt, remand to the District Court to finally obtain answers about whether any reasonable prefiling investigation was undertaken.

### D. But for Plaintiffs' false allegations, Alon would not have been a Defendant in this case.

Persian Gulf's Amended Complaint contained only two specific allegations concerning Alon: the Hydrocracker Allegation and the Market Participant Allegation. *See supra*, Statement of Case § III. The Consumer Plaintiffs' Consolidated Complaint, filed two years later, parroted those same two allegations verbatim. *Id*. at § V. As explained above, both allegations were frivolous because (i) they were false and (ii) Plaintiffs' Counsel failed to investigate them. The District Court relied on the false Hydrocracker Allegation in denying the Defendants' motion to dismiss Persian Gulf's Amended Complaint as to Alon when it concluded that the Hydrocracker Allegation was part of "tightly

synchronized multiple refinery shutdowns" that suggested a plausible conspiracy involving Alon. *Id*. at § IV; *see also id*. at § X (statement by Magistrate Judge Schopler during discovery hearing that Judge Lorenz relied on these allegations).

The District Court relied on the same reasoning in denying Alon's motion to dismiss the Consumer Plaintiffs' Consolidated Complaint. *Id*. at § VI. And the District Court also relied on the false Market Participant Allegation in denying Alon's motion to dismiss the Consumer Plaintiffs' Consolidated Complaint. Otherwise, the Court would have dismissed Alon from that case entirely on the same statute-of-limitations grounds because Alon did not refine any CARBOB in California after 2012, well before the June 21, 2014 statute-of-limitations cutoff in the District Court's decision. *Id*. at § VI.

Apart from the false Hydrocracker and Market Participant Allegations, the only allegations in the Complaints that mention Alon by name, as opposed to allegations against "defendants" generally, concern its "membership" in trade associations and the alleged "opportunity" such memberships provided to "collude." 5-ER-862-65; 4-ER-733-35. These allegations alone, without the false Hydrocracker and Market Participant Allegations, would not have been sufficient to sustain a claim of conspiracy at the pleading stage. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015)

45

("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement.").

And Plaintiffs' allegations against the "defendants" generally would have added nothing to the plausibility of Alon's participation in the purported conspiracy. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (Illston, J.) (granting motion to dismiss in part with leave to amend: "[T]he complaint must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it. The Court agrees that general allegations as to all defendants . . . [are] insufficient to put specific defendants on notice of the claims against them." (internal quotations, citation omitted).[12]

In short, Plaintiffs' Counsel chose to make false claims and allegations about Alon in their Complaints because, after the Court denied Persian Gulf's request for

---

[12] Other cases in the Ninth Circuit have reached the same conclusion. *See e.g.*, *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1068 (N.D. Cal. 2015) (Donato, J.) ("Plaintiffs argue that they are not required to plead the precise role in the conspiracy of each individual company in each corporate family, and try to rely on their general allegations against the larger Fujitsu corporate family. That is not a sound approach. An antitrust complaint must allege that each individual defendant joined the conspiracy and played some role in it." (internal quotations, citation omitted); *In re California Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1047 (N.D. Cal. 2021) (Tigar, J.) ("The complaint need not plead each defendant's involvement in the alleged [antitrust] conspiracy in elaborate detail, but must simply include allegations specific to each defendant alleging that defendant's role in the alleged conspiracy." (internal quotations omitted)).

46

pre-answer discovery, there was no Rule 11-compliant way to plead a conspiracy involving Alon. Therefore, it should not be surprising that Persian Gulf's Counsel, Robbins Geller Rudman & Dowd, have engaged in similar Rule 11 violations before and have been sanctioned for doing so, albeit without any deterrent effect on recidivism. In *City of Livonia Employees' Retirement System v. Boeing Company*, 711 F.3d 754 (7th Cir. 2013), Circuit Judge Posner, writing for the Seventh Circuit, chastised the Robbins Geller firm for similarly failing to investigate allegations in a securities class action, citing the firm's "ostrich tactics—of failing to inquire for fear that the inquiry might reveal [their allegations lacked a factual basis]" and pointing out the firm's "recidivism" in making "misleading allegations . . . to stave off dismissal." *Id*. at 761-62.

On remand in *City of Livonia*, the Chief Judge of the Northern District of Illinois imposed Rule 11 sanctions on the firm for its failure to conduct a reasonable pre-filing investigation, condemning Robbins Geller's "shoot first, aim later" approach and its "repeated" misconduct in both filing a complaint with unsupported allegations and continuing to advocate those allegations to the Court after they had reason to know they were unsupportable, just as the Robbins Geller firm did here.[13] 306 F.R.D. 175, 180-83 (N.D. Ill. 2014). While similar conduct in

---

[13] Counsel from the Robbins Geller firm in *City of Livonia* included Patrick Coughlin, who was also counsel in the instant cases. Mr. Coughlin, who served as lead counsel and argued Persian Gulf's opposition to the motions for summary

other litigation is not a factual basis for awarding Rule 11 sanctions in this case,

*City of Livonia* is persuasive, on-point legal authority demonstrating that sanctions

are appropriate for the same type of conduct that Plaintiffs' Counsel have again

engaged in here, apparently without remorse.

## II.    The District Court's ruling on Alon's request for 28 U.S.C. § 1927 sanctions should be reversed, or alternatively vacated and remanded.

Under 28 U.S.C. § 1927, any party "who so multiplies the proceedings in

any case unreasonably and vexatiously may be required by the court to satisfy

personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct." To support an award of sanctions under this statute, the

Ninth Circuit requires a showing of "subjective bad faith." *In re Keegan Mgmt. Co.

Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). "Bad faith is present when an attorney

knowingly or recklessly raises a frivolous argument, or argues a meritorious claim

for the purpose of harassing an opponent." *Id.* (internal quotations, citations

omitted). Thus, "[b]ad faith may be inferred from a totally baseless course of

conduct." *Kimble v. ADT Sec. Servs.*, No. 16-CV-2519, 2018 WL 1898556, at *5

(S.D. Cal. Apr. 20, 2018) (Curiel, J.); *see also Hunt v. Cnty. of El Dorado*, No. 10-

---

judgment by Alon and the other Defendants, recently withdrew his appearance in
the instant appeals, apparently because he left the firm. Appeal No. 22-56016, Dkt.
16. His withdrawal has no effect on liability under Rule 11 and 28 U.S.C. § 1927.
*See In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (rejecting argument that
"a lawyer may escape sanctions for misconduct simply by withdrawing from a case
before opposing counsel applies for sanctions").

CV-1367, 2012 WL 4862362, at *3 (E.D. Cal. Oct. 11, 2012) (Mendez, J.)

("[W]hen an attorney repeatedly and vexatiously presents facts and law to the

Court that are plainly wrong or misleading, which needlessly prolong and multiply

the summary judgment proceedings and materially increase the burden on the

Court, bad faith can be inferred." (internal quotations, brackets removed)); *Int'l

Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) ("[Bad

faith] may be inferred when an action is so completely without merit as to require

the conclusion that it must have been undertaken for some improper purpose."

(internal quotations, citation omitted)).

### A. The District Court abused its discretion by failing to articulate any reasoning for denying Alon's request for 28 U.S.C. § 1927 sanctions.

While "[d]istrict courts have broad fact-finding powers [to impose

sanctions]," the Ninth Circuit has explained, "we must know to what we defer."

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990)

(affirming award of Rule 11 sanctions, despite lack of district court analysis,

"because [plaintiffs' counsel] conducted absolutely no [prefiling] inquiry");

*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (same,

remanding for findings of fact in support of 28 U.S.C. § 1927 sanctions). "[W]hen

we are not certain of the district court's reasoning, or when we cannot discern

49

whether the district court considered the relevant factors, we must remand." *Townsend*, 929 F.2d at 1366.

Where a party makes a "strong showing" that sanctionable violations "may have occurred," "the district court should provide some explanation for disregarding the proffered showing." *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996) (citing Ninth Circuit *Townsend* decision) ("In summary, we conclude that [defendant] proffered substantial evidence in support of its Rule 11 motion and that the district court abused its discretion by denying the Rule 11 motion without adequate explanation."); *see also Trulis v. Barton*, 107 F.3d 685, 695 (9th Cir. 1995) (reversing denial of § 1927 sanctions where the "district court did not address or inquire into any of the abuses pointed out by the [defendants]"); *Malec Holdings II Ltd. v. Eng.*, 217 F. App'x 527, 530 (7th Cir. 2007) ("[A] district court abuses its discretion when it denies sanctions with no explanation, or with an explanation that is so conclusory that the appellate court cannot review the substance of its decision." (quoting *LaSalle Nat. Bank of Chicago v. Cnty. of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993)).

In denying Alon's motion for sanctions under 28 U.S.C. § 1927, the District Court here simply stated: "Alon bears the burden to show Plaintiffs' Counsel acted with subjective bad faith, and it has not met that burden here." 1-ER-5. This summary denial was an abuse of discretion because it failed to address any of the

abundant evidence of record showing that Plaintiffs continued to litigate their claims against Alon long after it became clear they lacked evidentiary support. This Court reversed a similar summary denial of § 1927 sanctions in *Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1995) because the district court there also "did not address or inquire into any of the abuses pointed out by the [defendants]." *Id.* at 692. In *Trulis*, the district court merely stated: "They took a position, you took a position. I don't think its [sic] an unreasonable position that they took. I think the evidence, you know supports your side in this particular case, and I'm not going to award sanctions." *Id.* The Ninth Circuit concluded that "[t]his finding, and the district court's failure to address the alleged misconduct, was an abuse of discretion." *Id.*

The Ninth Circuit in *Trulis* also explained the importance to the legal profession as a whole of awarding sanctions in cases where they are warranted and why it is imperative that courts adequately address credible reports of litigation misconduct, such as Alon's in these cases:

> Although the sanctions in this case are payable to the [defendants], the real cost of [plaintiff's counsel's] misconduct, and of most attorney misconduct, is borne by the clients and the legal profession as a whole. At a time when public confidence in the legal profession has already been severely eroded, courts cannot further jeopardize that confidence by condoning such egregious and pervasive attorney misconduct.

*Id.* at 696.

51

The District Court's summary denial of Alon's Motion for Sanctions under § 1927, as in *Trulis*, was an abuse of discretion warranting reversal and a remand for further proceedings.

> **B.    The evidentiary record is replete with evidence that Plaintiffs' Counsel continued to litigate their claims against Alon through costly discovery and summary judgment after it became clear they lacked evidentiary support.**

Section 1927 imposes a duty on counsel "to correct or withdraw litigation positions after it becomes obvious that they are meritless." *In re Girardi*, 611 F.3d 1027, 1034, 1064 (9th Cir. 2010) (adopting special master's recommendations and imposing sanctions under § 1927); *see also Frey v. Town of Jackson*, 41 F.4th 1223, 1245 (10th Cir. 2022) ("Continuing to pursue claims after a reasonable attorney would realize they lacked merit can warrant sanctions under § 1927."); *Baiul v. NBC Sports*, 708 F. App'x 710, 715 (2d Cir. 2017) (affirming award of sanctions under § 1927 for continuing to litigate meritless claims); *Cook-Benjamin v. MHM Corr. Servs., Inc.*, 571 F. App'x 944, 949 (11th Cir. 2014) ("[C]ounsel's steadfast refusal to drop these [factually unsupported] claims until the response to the defendants' summary judgment motion unnecessarily and unreasonably multiplied the litigation. Thus, we agree with the district court's conclusion that sanctions under § 1927 were appropriate as well.").

Plaintiffs' Counsel were on notice that their claims and allegations against Alon lacked a factual basis no later than April 25, 2019. That is the date when

Alon produced to Plaintiffs publicly available documents showing that their Hydrocracker and Market Participant Allegations were false. *See supra*, Statement of Case § VII. Yet, Plaintiffs' Counsel refused to withdraw their claims and allegations against Alon, despite conceding that "the Alon Bakersfield refinery shuttered its doors for good at the end of 2012" and agreeing that "Alon is differently situated than other defendants." *Id*. at § IX. The Consumer Plaintiffs refused to withdraw their copycat allegations while Alon's Motion to Dismiss was still pending, meaning they continued to advocate allegations they knew by then to be false at a key inflection point in the case before expensive discovery had begun. *Id*. at § VII. Plaintiffs' Counsel later conceded the Hydrocracker Allegation's date was false, flippantly calling it a "scrivener's error." *Id*. at § XIII.

In light of Plaintiffs' Counsels' refusal to withdraw their false Hydrocracker and Market Participant Allegations, Alon served Basis Interrogatories on Plaintiffs to investigate whether they had any yet-undisclosed evidentiary bases for making those Allegations. *Id*. at § X. In response, Plaintiffs' Counsel failed to identify a single document supporting the Hydrocracker and Market Participant Allegations, other than the unsupported McCullough Memo,[14] which Plaintiffs parroted verbatim in their Complaints. *Id*. at § XI. Neither Plaintiffs nor Mr. McCullough

---

[14] Plaintiffs also admitted in their opposition to Alon's motion to compel that the basis for the Hydrocracker Allegation was the McCullough Memo. *See supra*, Statement of Case § XI.

have ever identified where the inaccurate hydrocracker "restart" date in the McCullough Memo came from. Plaintiffs' Counsel should have known from the beginning that the Hydrocracker and Market Participant Allegations were false because their own document productions, as well as Mr. McCullough's, contained documents contradicting them. *Id*. at §§ VII, VIII.

Despite the mountain of evidence showing their allegations against Alon to be false, Plaintiffs' Counsel continued to press their claims at great expense to Alon and great burden to the Court. In response to Alon's Motion for Sanctions, which pointed out that Plaintiffs lacked any evidentiary support for their Hydrocracker and Market Participant Allegations, Plaintiffs' Counsel raised for the first time the Selas Heater Emissions Chart. *Id*. at § XIII. Plaintiffs notably did not cite that Emissions Chart in their Court-ordered answers to Alon's Basis Interrogatories, which would suggest that it was cobbled together as an eleventh-hour attempt to justify allegations that Plaintiffs' Counsel had failed to previously verify. *Id*. at § XI.

What's more, there were several glaring problems with the Emissions Chart. First, it did not support Plaintiffs' original Hydrocracker Allegation, as the February 15, 2022 date in that Chart did not correspond to the April 20, 2012 date in the Hydrocracker Allegation. *Id*. at § XIII. Second, it did not support Plaintiffs' conspiracy theory of "tightly synchronized multiple refinery shutdowns," which

the District Court relied upon in denying Alon's motions to dismiss. *Id*. at § IV. This is because the Emissions Chart, even if accepted as true, only shows emissions at Alon's Bakersfield refinery until February 15, 2012, as Plaintiffs' Counsel acknowledged in their Motion-for-Sanctions briefing. 3-ER-375, 378. February 15th was 8.5 weeks before the "maintenance shutdowns" during the "short window of less than four weeks between April 20 and May 15" that led the District Court to deny Alon's motions to dismiss, meaning the Court would not have been able to infer a conspiracy involving Alon based on timing of "maintenance shutdowns" if the Hydrocracker Allegation date had originally been February 15th. *See supra*, Statement of Case § IV. And third, Plaintiffs' Counsel failed to explain the connection between emissions from a Selas heater and hydrocracker refining, a connection Mr. McCullough was not qualified to elaborate on even if there were something there. *Id*. at § XIII.

Remarkably, despite Plaintiffs' Counsels' heavy reliance on the Selas Heater Emissions Chart in opposing Alon's Motion for Sanctions, they failed to seek any fact or expert discovery from Alon concerning emissions at its Bakersfield refinery.[15] *Id*. at § XIV. Plaintiffs' Counsel also failed to produce in discovery the data on which the Emissions Chart was purportedly based or to identify the methodology Mr. McCullough used to create it. In fact, Mr. McCullough's expert

---

[15] At summary judgment, Alon objected to the Selas Heater Emissions Chart on a number of grounds, many of which Plaintiffs did not rebut. 1-ER-116.

report and deposition testimony barely mentioned Alon at all, except to say that Alon was not involved in a separate California price-fixing investigation. At the lengthy oral argument before the District Court on the Defendants' motions for summary judgment, Plaintiffs' Counsel did not mention the Selas Heater Emissions Chart at all, let alone Alon.[16] These discrepancies between Plaintiffs' Counsels' arguments to defeat sanctions and their lack of basic discovery on Selas heater emissions speaks volumes about the credibility of the Selas Heater Emissions Chart purportedly supporting Plaintiffs' claims against Alon.

If there were still any doubt about the import of refinery emissions, Plaintiffs' subsequent depositions of Alon employees Alan Moret and Tony Nader confirmed that emissions from "utility units," much like those from a Selas heater, could produce some emissions even when the Bakersfield refinery was not producing CARBOB.[17] *Id.* at § XIV. Yet, even when Mr. Moret and Mr. Nader were questioned about Alon's refinery operations, Plaintiffs' Counsel declined to follow up and ask about Selas heater emissions and their connection with other

---

[16] The only reference to Alon was an admission that Plaintiffs' Counsel did not have information about "temporary value adjustments" as to Alon.

[17] Mr. Nader's deposition was taken by Carmen Medici of the Robbins Geller firm, who recently withdrew his appearance on appeal and left the firm. Mr. Medici's withdrawal has no effect on liability under Rule 11 and 28 U.S.C. § 1927. *See In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (rejecting argument that "a lawyer may escape sanctions for misconduct simply by withdrawing from a case before opposing counsel applies for sanctions").

56

refinery operations. Thus, by the close of discovery, the only evidence in the record demonstrated that the Selas Heater Emissions Chart was *not* reliable evidence of CARBOB production, exactly the opposite conclusion from the one Plaintiffs' Counsel tried unsuccessfully to sell the Court at summary judgment.

In short, Plaintiffs' Counsel never had any evidence supporting Alon's involvement in the purported conspiracy. At summary judgment, they could not cite any relevant evidence (*id*. at XIV), which the District Court eventually found in granting Alon's motion for summary judgment. Plaintiffs' Counsel continued to litigate their claims against Alon well after it became obvious they were meritless. The record shows Plaintiffs' Counsel violated 28 U.S.C. § 1927, warranting a reversal of the District Court's order denying sanctions.

## CONCLUSION

In light of the foregoing, Alon respectfully asks this Court to reverse the District Court's Orders on Alon's Motion for Sanctions and remand to the District Court for an assessment of appropriate sanctions in the amount of Alon's attorneys' fees and costs expended in these cases. Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies

the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

In the alternative, Alon asks this Court to vacate the District Court's Orders on Alon's Motion for Sanctions and remand for consideration of Alon's Motion for Sanctions consistent with this Court's decision, including any further proceedings deemed necessary by the District Court.

Date: March 3, 2023                **BAKER & HOSTETLER LLP**

                                  /s/ *Carl W. Hittinger*
                                  Carl W. Hittinger
                                  Tyson Y. Herrold
                                  1735 Market Street, Suite 3300
                                  Philadelphia, PA 19103
                                  Phone: (215) 564-2898
                                  Fax: (215) 568-3439
                                  chittinger@bakerlaw.com
                                  therrold@bakerlaw.com

                                  ***Attorneys for Defendant-Appellant Alon USA Energy, Inc.***

**STATEMENT OF RELATED CASES**

Pursuant to Circuit Rule 28-2.6, the following appeals are from cases that were coordinated by the District Court and that involve the same or similar factual and legal issues:

Persian Gulf, Inc. v. Alon USA Energy, Inc., 22-56016

Joshua Ebright, et al. v. Alon USA Energy, Inc., 22-56018

/s/ *Carl W. Hittinger*
Carl W. Hittinger
Attorney for Alon USA Energy, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-56016; 22-56018

I am the attorney or self-represented party.

**This brief contains** | 13,876 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [        ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | Carl W. Hittinger | **Date** 3/3/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*